UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR No. 25-00066-MSM-PAS |
| | ) | |
| MIGUEL TAMUP-TAMUP | ) | |

### MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS INDICTMENT

The defendant, Miguel Tamup-Tamup respectfully submits this memorandum of law in support of his motion to dismiss the indictment with prejudice. The defendant submits that his statutory and Constitutional rights have been violated because the government deported him to Guatemala during the pendency of the case.

### I.     Statement of Facts and Procedural History

On May 15, 2025, Miguel Tamup-Tamup[1] appeared on a criminal complaint that had been filed under seal on May 7, 2025. The complaint alleged assault, resisting, and impeding a law enforcement officer in the performance of official duties pursuant to 18 U.S.C. § 111(a). By way of factual background, the government alleged that immigration and other law enforcement officials attempted to stop Mr. Tamup-Tamup to execute an administrative warrant. Officers claim that Mr. Tamup, who speaks only the Guatemalan dialect K'iche', did not exit his car after being

---

[1] While this name appears this way in his legal documents, his true name is Miguel Us Tamup. The Department of Justice, in its immigration filings, has Mr. Tamup listed as Miguel Us Tamup Alfredo. He is referenced as Tamup-Tamup in this memorandum for consistency.

1

asked to do so in English. Upon the agents physically removing him from the vehicle, the complaint alleged that he flailed his arms, pulled his hands away, slipped out of his shirt, and ran down the street. At some point during this incident, one of the agents stepped back and fractured her ankle. After the government moved for detention on the basis of flight, Magistrate Judge Sullivan outlined a series of factual questions she wanted resolved before making a final determination as to detention or release. A detention hearing and preliminary hearing was scheduled for June 17, 2025.

On June 11, 2025, a Grand Jury returned the instant indictment, charging two counts of assault, resisting, opposing, or impeding, with law enforcement during their performance of official duties. After his arraignment on June 17, 2025, and a contested detention hearing, Magistrate Judge Sullivan released Mr. Tamup-Tamup on an unsecured bond of $10,000 and conditions. The government did not appeal the Magistrate Judge's decision to release Mr. Tamup-Tamup. After the hearing, Mr. Tamup-Tamup was not released to his liberty, as ordered by Magistrate Judge Sullivan, but was turned over to ICE pursuant to a detainer.

Once Mr. Tamup-Tamup was released to the ICE detainer, ICE commenced immigration proceedings against him. On July 21, 2025, Immigration Judge Natalie Smith signed an order of removal. Mr. Tamup-Tamup was deported to Guatemala on July 28, 2025. At his arraignment, he requested 30 days of excludable time to review discovery and file any pretrial motions, which were due on July 18, 2025. As Mr. Tamup-Tamup was still at FCI Berlin on July 18, 2025, and had not yet been deported, the instant motion was not ripe. Now that Mr. Tamup-Tamup has been deported, the motion is ripe, and dismissal with prejudice is the appropriate remedy.

## II.     Legal Standard

Pursuant to Federal Rule of Criminal Procedure 12(b)(1) a defendant may "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." "An indictment, or a portion thereof, may be dismissed [upon a defendant's motion] if it is otherwise defective or subject to a defense that may be decided solely on issues of law." *United States v. Mubayyid*, 476 F. Supp. 2d 46, 50 (D. Mass. 2007)(quoting *United States v. Labs of Virginia, Inc.,* 272 F. Supp. 2d 764, 768 (N.D. Ill. 2003)).

The Court, when considering a motion to dismiss an indictment, assumes all facts in the indictment to be true and views all facts in the light most favorable to the government. *United States v. Sampson*, 371 U.S. 75, 78-79 (1962); *United States v. Ferris*, 807 F.2d 269, 271 (1st Cir. 1986). "A court can decide all questions of law raised in a motion to dismiss and can make necessary preliminary findings of fact as long as the court does not invade the province of the jury." *United States v. Caputo*, 288 F. Supp. 2d 912, 916 (N.D. Ill. 2003).

Federal courts may exercise their supervisory powers to grant a motion to dismiss the indictment. The Supreme Court has found that "the purposes underlying use of the supervisory powers are threefold: to implement a remedy for violation of recognized rights; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and finally, as a remedy designed to deter illegal conduct." *United States v. Hasting*, 461 U.S. 499, 505 (1983)(citing *McNabb v. United States*, 318 U.S. 332, 334 (1943)). *See United States v. Santana*, 6 F.3d 1, 10 (1st Cir. 1993)(referring to *Hastings* but noting that it exercises this power "sparingly"); *United States v. Batista*, 834 F.2d 1, 5 (1st Cir. 1987). When "evidence of a constitutional infraction looms, remedies ordinarily 'should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe

3

on competing interests.'" *United States v. Stokes*, 124 F.3d 39, 44 (1st Cir. 1997)(quoting *United States v. Morrison*, 449 U.S. 361, 363-64 (1981)). Yet, dismissal of charges "is appropriate when the investigatory or the prosecutorial process has violated a federal constitutional or statutory right, and no lesser remedial action is available." *United States v. Munoz-Garcia*, 455 F. Supp. 3d 915, 918 (D. Ariz. 2020)(quoting *United States v. Barrera-Moreno*, 951 F.2d 1089. 1092 (9th Cir. 1991); *United States v. Castro-Guzman*, 2020 WL 3130395 (D. Ariz. May 11, 2020).

Courts have exercised this supervisory power to dismiss criminal cases where the defendant has been deported. *See United States v. Castillo*, 537 F. Supp. 3d 120 (D. Mass. 2021); *Munoz-Garcia*, 455 F. Supp.3d at 918 (adopting Magistrate Judge's recommendation to dismiss); *Castro-Guzman*, 2020 WL 3130395, at *2, *6; *United States v. Perez-Canez*, 2020 WL 1000029, at *3 (D. Ariz. Mar. 2, 2020)("Since neither party purports to know where Defendant is located and his release conditions do not require him to facilitate his attendance at further proceedings in this matter, the Court finds that ICE's actions have jeopardized the Court's ability to try Defendant and therefore dismisses the Indictment"); *United States v. Lutz*, 2019 WL 5892827 (D. Ariz. Nov. 12, 2019) ("dismissal of the indictment is appropriate under this Court's supervisory powers to remedy the ongoing violation of Defendant's Sixth Amendment rights); *United States v. Resendiz-Guevara*, 145 F. Supp. 3d 1128, 1133 (M.D. Fla. 2015) ("the Government has abandoned its prosecution, Defendant's constitutional rights have been violated, and because Defendant's constitutional rights were violated, this Court may use its supervisory powers to dismiss the indictment without prejudice").

Many courts have dismissed the case with prejudice. *See Munoz-Garcia*, 455 F. Supp. 3d at 918. In *Munoz-Garcia*, "dismissal of the indictment with prejudice was warranted,

4

because after Defendant was released pending trial under the Bail Reform Act, the Executive Branch was obliged to either abandon the criminal prosecution and proceed with removal, or stay removal and release the Defendant…By instead opting to proceed immediately with Defendant's removal…the United States government violated her statutory right to be released from custody under the BRA, as well as her Sixth Amendment right to counsel." *Id. See also Castro-Guzman*, 2020 WL 3130395, at *6 (dismissing with prejudice because the defendant, who was removed to Mexico, continued to suffer violations of his right to counsel and speedy trial and those violations were "due solely to the actions of the Government"); *Lutz*, 2019 WL 5892827, at *5 (dismissing with prejudice based on violation of right to counsel and "to promote respect for the BRA and to deter ICE and the U.S. Attorney's Office from continuing to engage in turf battles in lieu of inter-agency cooperation").

### III.     Argument

**A. The Government Violated Mr. Tamup-Tamup's Rights Under the Bail Reform Act**

The Bail Reform Act and related statutes give the Court authority, not only to arrest an individual, but "the authority to determine whether that individual should be detained or released pending trial" *Castillo*, 537 F. Supp. 3d at 125. Here, Magistrate Judge Sullivan found that Mr. Tamup-Tamup did not pose a serious risk of flight and did not pose a danger to anyone or the community, ordering his release on conditions. The Bail Reform Act clearly places the determination of release, under the framework of flight and danger, with a judicial officer. ICE's decision to take custody of Mr. Tamup-Tamup usurped this statutory right. *See Castillo; Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1178 (D. Or. 2012). "If the government disagreed with the Magistrate Judge's evaluation of flight risk and danger to the community, the proper step would

5

have been for the government to appeal that decision." *Castillo*, 537 F. Supp. 3d at 126. They did not do so.

Here, the United States elected to prosecute Mr. Tamup-Tamup despite the existence of an ICE detainer. In making that choice, the government is not permitted to use its power of removal to override Mr. Tamup-Tamup's statutory right to release under the Bail Reform Act. ICE's detention and removal of Mr. Tamup-Tamup impaired the Bail Reform Act's "purpose of ensuring [a] defendant's appearance at judicial proceedings." *See Lutz*, 2019 WL 5892827, at *4. In reality, the government essentially ensured that Mr. Tamup-Tamup would not appear for his future court proceedings by deporting him. And it is worth noting that "Nothing in the BRA suggests that ICE (or these other jurisdictions) who obtain custody may choose not to return the defendant as needed for the federal proceedings." *Castillo*, 537 F. Supp. 3d at 126. Because the government made it impossible for Mr. Tamup-Tamup to appear for his future court appearances, the appropriate remedy is for the Court to use its supervisory powers to dismiss the indictment with prejudice.

**B. The Government Violated Mr. Tamup-Tamup's Fifth and Sixth Amendment Rights**

The instant indictment has been scheduled for trial on September 22, 2025. By deporting him in the interim, the Government has deprived Mr. Tamup-Tamup of his right to due process under the Fifth Amendment and right to assistance of counsel under the Sixth Amendment It further violates his rights under the Speedy Trial Act because he will not be able to appear for his trial as scheduled. *See* 18 U.S.C. §3161(c)(1); §3173.

Under the Fifth Amendment to the United States Constitution, "no person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. *See Resendiz-Guevara*, 145 F. Supp. 3d at 1137 (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982)) ("The Fifth Amendment right to due process guarantees that a criminal defendant will be treated with 'that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.'"). Under the circumstances, Mr. Tamup-Tamup is unable to properly prepare his defense because he was deported. *See Resendiz-Guevara*, 145 F. Supp. 3d at 1138 (agreeing with Defendant that "because he was deported he is unable in any way to prepare a defense to the charge"). If the government were to try to proceed with the criminal prosecution in his absence, that would likewise prevent a fair trial. *See Castillo*, 537 F. Supp. 3d at 128 (citing *Valenzuela-Bernal*, 458 U.S. at 872). Mr. Tamup-Tamup is unavailable for trial and thus, this Court's ability to try him fairly is jeopardized through no fault of his own. *See Castro-Guzman*, 2020 WL 3130395, at *5.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right…to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense." U.S. Const. amend. VI. Mr. Tamup-Tamup's absence from the District of Rhode Island where he faces charges and where he allegedly committed the charged offenses clearly interferes with his ability to consult with counsel and prepare his defense. *Castillo*, 537 F. Supp. 3d at 128 (citing *United States v. Ferreira-Chavez*, No. 1:20-cr-00145-BLW, 2021 U.S. Dist. LEXIS 29513, 2021 Wl 602822, at *3 (D. Idaho Feb. 12, 2021). The Defendant's inability to consult with his attorney, review evidence against him with counsel, and prepare a defense to the charge is solely attributable

7

to the government. Because his constitutional rights have been violated, the indictment against him must be dismissed with prejudice.

These constitutional violations mandate dismissal with prejudice. While "an indictment should not be dismissed with prejudice when other means exist to correct a constitutional breach," here no other sufficient means exist to remedy the constitutional violations created by Mr. Tamup-Tamup's deportation. *Stokes*, 124 F.3d at 44. In *Lutz, Castro-Guzman,* and *Munoz-Garcia*, the district courts dismissed with prejudice given the government's violation of the defendants' Sixth Amendment right to counsel. *See Munoz-Garcia*, 455 F. Supp. 3d at 918*;* Lutz*, 2019 WL 5892827, at \*5; Castro-Guzman*, 2020 WL 3130395, at \*6. Those same courts have also dismissed with prejudice in part to deter the United States Attorney's Office and ICE from continuing to engage in conduct continuously violating defendant's rights under the Bail Reform Act and the United States Constitution. *See LutzI, 2019 WL 5892827, at \*5 (*dismissing with prejudice "to promote respect for the BRA and to deter ICE and the U.S. Attorney's Office from continuing to engage in turf battles in lieu of inter-agency cooperation"); *Munoz-Garcia*, 455 F. Supp. 3d at 918; *Castro-Guzman*, 2020 WL 3130395, at \*6 ("this is not an isolated event within this District").

C.  **The Government Abandoned its Prosecution of Mr. Tamup-Tamup**

When an individual is unlawfully present in the United States, the United States' Executive branch has two options: "proceed administratively with deportation or defer removal for the [individual] to face criminal prosecution." *United States v. Resendiz-Guevara*, 145 F. Supp. 3d 1128, 1136 (M.D. Fla. 2015) (citing *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015)). *See also United States v. Ventura*, 2017 WL 5129012. At \*2 (E.D.N.Y. Nov. 3, 2017)

("The Government cannot and should not have it both ways…the Executive Branch should decide where its priorities lie: either with a prosecution in federal district court or with removal of the deportable alien."). If the Government decides to pursue prosecution over deportation, "administrative deportation proceedings must take a backseat to court proceedings until the criminal prosecution comes to an end." *See Resendiz-Guevara*, 145 F. Supp. 3d at 1136 (quoting *United States v. Blas*, 2013 WL 5317228, at *3 (S.D. Ala. Sept. 20, 2013)).

However, if the Executive Branch opts to proceed with removal proceedings, the criminal prosecution must cease. *Resendiz-Gueavara*, 145 F. Supp. 3d at 1137. There, the Court dismissed the pending criminal case when the defendant was deported to Mexico before his trial. *Id.* at 1131-32, 1134. The defendant was indicted for a charge of illegal reentry, having been referred to the U.S. Attorney's office for prosecution by the Department of Homeland Security, who had an ICE detainer for the defendant. *Id.* at 1131. The defendant was released on bond and deported to Mexico before his trial. *Id.* at 1132. The Court found that the government abandoned its prosecution by deporting the defendant. *Id.* at 1133. *See also United States Castillo*, 537 F. Supp. 3d at 129. There, the defendant was indicted on drug charges and then deported, preventing adjudication of his case. The Court explicitly found that "while the government may argue that there was no intentional abandonment of the drug prosecution, the court finds that by removing Defendant the government has in fact abandoned the drug prosecution." *Id. See also Munoz-Garcia*, 455 F. Supp. 3d at 918 ("the government chose to proceed with the defendant's removal proceeding and deport her from the United States. The result of that choice is that the government abandoned the criminal prosecution.") *See also Trujillo-Alvarez*, 902 F. Supp.2d at 1170 ("If the Executive Branch chooses not to release the Defendant and instead decides to abandon criminal

9

prosecution of the pending charge and proceed directly with Defendant's removal and deportation, the law allows the Executive Branch to do that.")

Here, Mr. Tamup-Tamup was arraigned and released by the Magistrate Judge. Despite the arraignment order and the pending case against him, the United States elected to proceed with removal proceedings. Mr. Tamup-Tamup is not the cause of his absence, and he is not at fault for conflicting interests between the two executive agencies here. The U.S. Attorney's Office was well aware of the concurrent immigration proceedings and knew that Mr. Tamup-Tamup would likely be deported. Because the government deported Mr. Tamup-Tamup immediately, it prioritized removal and abandoned prosecution.

**Conclusion**

Miguel Tamup-Tamup's indictment in this case must be dismissed with prejudice. By deporting him, the government has abandoned its criminal prosecution. Additionally, by removing him from this district, and this country, the government has unequivocally violated the Bail Reform Act, and the Fifth and Sixth Amendments to the United States Constitution. This circumstance is not an isolated one and given the current political climate, is likely to occur again and again. A dismissal without prejudice simply preserves the status quo, gives the government the message that they can continue to violate individual rights without consequence, and in fact would unfairly benefit the government as it would allow two agencies within the Executive Branch to ignore each other. A dismissal with prejudice is the appropriate remedy under the circumstances, both to address the injuries Mr. Tamup-Tamup has suffered, and to deter the government from similar violations in the future. For all these reasons, Mr. Tamup-Tamup respectfully asks that this court grant his motion to dismiss with prejudice.

        Respectfully submitted
        Miguel Tamup-Tamup
        By his attorney,

        /s/ Rebecca L. Aitchison, #8610
        Assistant Federal Defender
        10 Weybosset St., Ste. 300
        Providence, RI 02903
        (401) 528-4281
        FAX 867-2814
        rebecca_aitchison@fd.org

## **CERTIFICATION**

    I hereby certify that a copy of this motion was delivered by electronic notification to Milind Shah, Assistant United States Attorneys, on August 1, 2025.

        /s/ Rebecca L. Aitchison